No. 25-8012

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

BEAN MAINE LOBSTER, INC.; MAINE LOBSTERMEN'S ASSOCIATION; MAINE COAST FISHERMEN'S ASSOCIATION, INC.; MAINE LOBSTER AND PROCESSING, LLC, d/b/a Atwood Lobster, LLC.; and BUG CATCHER, INC.,

        Plaintiffs - Respondents,

v.

MONTEREY BAY AQUARIUM FOUNDATION,

        Defendant - Petitioner.

On Appeal from the
United States District Court for the District of Maine
Case No. 2:23-cv-00129-JAW

**BRIEF OF PUBLIC CITIZEN AS AMICUS CURIAE
SUPPORTING PETITION FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

        Paul Alan Levy
         Public Citizen Litigation Group
        1600 20th Street, N.W.
         Washington, D.C. 20009
        (202) 588-7725
        plevy@citizen.org

        Attorney for Public Citizen

## CORPORATE DISCLOSURE STATEMENT

Public Citizen is a non-profit corporation. It has no parent corporation and has issued no stock.

**TABLE OF CONTENTS**

Corporate Disclosure Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  I

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

INTEREST OF AMICUS CURIAE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT

A.    The District Court's Legal Conclusion on the "Of and Concerning" Issue Warrants Plenary Appellate Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

B.    The District Court's Analysis of Fact Versus Opinion Also Warrants Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12


# TABLE OF AUTHORITIES

**CASES**

*Anyanwu v. CBS*,
 887 F. Supp. 690 (S.D.N.Y. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Arcand v. Evening Call Pub. Co.*,
 567 F.2d 1163 (1st Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Aviation Charter v. Aviation Research Group/US*,
 416 F.3d 864 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Compuware Corp. v. Moody's Investors Servs.*,
 499 F.3d 520 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Conformis, Inc. v. Aetna, Inc.*,
 58 F.4th 517 (1st Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Davis v. Avvo, Inc.*,
 345 F. Supp. 3d 534 (S.D.N.Y. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gertz v. Robert Welch, Inc.*,
 418 U.S. 323 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*JB & Associates v. Nebraska Cancer Coalition*,
 932 N.W.2d 71 (Neb. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Milkovich v. Lorain Journal Co.*,
 497 U.S. 1 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*NetScout Sys., v. Gartner, Inc.*,
 223 A.3d 37 (Conn. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*New York Times v. Sullivan*,
 376 U.S. 254 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sawyer v. Monterey Bay Aquarium*,
    No. 2:23-cv- 00796 (E.D. La.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sullivan v. Chester Water Auth.*,
    2022 WL 2901068 (D. Me. July 22, 2022) . . . . . . . . . . . . . . . . . . . . . . . . 6

*ZL Techs. v. Gartner, Inc.*,
    709 F. Supp. 2d 789 (N.D. Cal. 2010),
    *aff'd sub nom. ZL Techs., Inc. v. Gartner Group*,
    433 Fed. Appx. 547 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**MISCELLANEOUS**

*"Red-Listing" of Lobster: Misguided and Counterproductive*,
    https://www.mass.gov/news/from-the-directors-desk-red-
    listing-of-lobster-misguided-and-counterproductive (Dec. 23, 2022) . . . 3, 4

Public Citizen urges the Court to grant the petition of Monterey Bay Aquarium Foundation ("MBAF") for permission to appeal.

## INTEREST OF AMICUS CURIAE[1]

Amicus curiae Public Citizen is a nonprofit consumer-advocacy organization with members in all 50 states. Public Citizen appears on behalf of its members before Congress, administrative agencies, and the courts on a wide range of issues involving protection of consumers and workers, public health and safety, and maintaining openness and integrity in government. Public Citizen issues many reports and press statements broadly criticizing various industry and political groups and calling for consumer action to vindicate the public interest, and it encourages its members and supporters to express their own views about the problems that Public Citizen describes. The reasoning of the court below threatens to expose Public Citizen and its members to the burdens of meritless libel litigation, which is notoriously expensive and time-consuming.

## STATEMENT OF THE CASE

MBAF's "Seafood Watch" program takes positions on whether various seafoods are, in MBAF's judgment, "environmentally sustainable," rating them on

---

[1] This brief was not authored in whole or part by counsel for a party, and no one other than amici curiae or their counsel made a monetary contribution to the preparation or submission of the brief. No party opposes its filing.

a scale of green, yellow, and red. The program is intended to influence both consumer consumption, the purchase decisions of major seafood buyers, and government regulation. In 2022, MBAF published a 73-page report on the American lobster, evaluating American and Canadian lobster fisheries and their impact on, among other things, the North American right whale. Assessing conflicting evidence and studies supported by a ten-page listing of sources, MBAF's analysis led it to change the color code for lobster taken from the U.S. and Canadian fisheries from yellow to red, stating, "Seafood Watch recommends to **Avoid** American lobster." (emphasis in original). What followed was a drastic drop in the purchasing of lobsters caught by Maine lobstermen (as well as others fishing in those grounds) and a drop in the market price of lobster.

Three Maine lobster companies and two Maine trade associations sued MBAF for defamation, alleging that nine separate passages attributed to the report were false and defamatory, *see* Complaint ¶ 94. The nine passages were:

> (1) "At this time, each fishery using this gear is putting this protected species [i.e., the North Atlantic Right Whale] at risk of extinction."
>
> (2) "No one wants to know their appetite for seafood is driving a species to extinction."
>
> (3) "The seafood [rated Avoid] is caught or farmed in ways that harm other marine life or the environment. There's a critical conservation concern or many issues need substantial improvement."

(4) "[M]anagement measures and the Atlantic Large Whale Take Reduction Plan have not been successful at reducing serious injury and mortality to the North Atlantic right whale."

(5) "Based on the available information and the significant risks to [the North Atlantic right whale], the American lobster fishery cannot be considered sustainable."

(6) "The updated assessments highlight significant risks of entanglement in pot, trap, and gillnet fisheries to the endangered North Atlantic right whale and the lack of timely, effective management necessary to mitigate entanglement risks and promote recovery of the species."

(7) That Seafood Watch reviewed "all available scientific data" and followed a "rigorous, transparent, science-based process to evaluate" the Maine lobster fishery.

(8) "According to Seafood Watch standards, when fisheries pose a high risk of harm to marine life or the environment and appropriate management measures are not in place, they are assigned a red rating."

(9) Consumers should "avoid" and "take a pass" on purchasing lobster and lobster products caught in the Gulf of Maine/Georges Bank region on the basis of these allegedly false statements.

A32-33.

Only the words in quotation marks are from the Report itself.

The district court denied MBAF's motion to dismiss for failure to state a claim, finding that the passages were "of and concerning" the plaintiffs, A103-112, and determining that the plaintiffs had adequately shown that the nine passages stated actionable facts and not opinions. A112-123.

## REASONS FOR INTERLOCUTORY REVIEW

### A. The District Court's Legal Conclusion on the "Of and Concerning" Issue Warrants Plenary Appellate Review.

The Court's decision about whether to grant plenary appellate review of this case should begin with a review of the allegedly defamatory passages. Not one of the passages quotes anything in MBAF's report that refers specifically to any of the plaintiffs, nor to "Maine lobstermen" generally. Two passages contain the word "Maine," but in each of those passages, the reference was to the fact that the report was about all of the lobster to be found in the Gulf of Maine and Georges Bank, an area described in the report as bounded by Cape Cod in Massachusetts and the southern tip of Nova Scotia, a region generally fished by lobster companies based not only in Maine but also in Massachusetts and Canada. Indeed, the report itself, and the press release touting it, referenced "U.S. and Canadian fisheries" as posing the threat to the right whale.[2]

The plaintiffs argued below, citing their complaint, that everybody learning of MBAF's statements understood them to be directed to fishing companies operating from Maine. But the public record belies that contention: the state of Massachusetts also complained about the report, *see "Red-Listing" of Lobster: Misguided and*

---

[2] These documents were attached to the complaint as exhibits, ECF 1-1 and 1-2, and hence are properly considered in an appeal from a Rule 12(b)(6) dismissal.

*Counterproductive,* https://www.mass.gov/news/from-the-directors-desk-red-listing-of-lobster-misguided-and-counterproductive (Dec. 23, 2022), and Massachusetts lobstermen brought a class action based on the harm that the report inflicted on 1800 Massachusetts fishing operations. *Sawyer v. Monterey Bay Aquarium*, No. 2:23-cv-00796 (E.D. La.). In fact, the statements, and the report as a whole, were about the impact of the activities of the entire body of lobster fishing companies, including the 5600 in Maine, the 1800 in Massachusetts, and those in Canada. This group is so large that ordinarily a claim would be foreclosed based on the rule, well accepted in this Circuit, that criticism of an entire group does not entitle any individual member of the group to sue for defamation. *See Arcand v. Evening Call Pub. Co.*, 567 F.2d 1163 (1st Cir. 1977). The rule against group libel claims is an aspect of the "of and concerning" requirement, which has its roots in the First Amendment as well as the common law of libel. *See New York Times v. Sullivan*, 376 U.S. 254, 288 (1964).

The trial court recognized that the "small group" exception could not apply because that generally does not apply to groups larger than 25. A107. Instead, it relied on the circumstances of publication test, which, the court said, applies because the report references the entire American lobster fishery, with no exceptions for any subset of that fishery. A107-112. But as applied by the Court, this exception could allow libel claims based on any criticism of a group no matter how large—it becomes

an exception that swallows the rule—even though in each of the cases on which the court relied for the existence of that exception, the statement was about members of relatively small groups.  A104-111, citing *Arcand*, 567 F.2d at 1165 (group of 21, exception held inapplicable); *Anyanwu v. CBS*, 887 F. Supp. 690, 693 (S.D.N.Y. 1995) (special circumstances test not applicable because reference was to members of a group of 500, too large for the exception); *JB & Associates v. Nebraska Cancer Coalition*, 932 N.W.2d 71, 79 (Neb. 2019) (special circumstances exception not met because criticism of tanning studios was statewide, not just studios in Lincoln and Omaha).  *See also Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 530 (1st Cir. 2023) (exception to bar on group libel claims rejected, but claim allowed because one section of report criticized a product of which plaintiff was the only manufacturer); *Sullivan v. Chester Water Auth.*, 2022 WL 2901068, at *13 (D. Me. July 22, 2022) (group of 65, exception held inapplicable).  For that reason alone, the lower court's "of and concerning" analysis was error warranting interlocutory review.

Moreover, some of the reasons given by the Court for applying the "circumstances of publication" rule have no logical bearing on whether the statements made clear that they applied to a particular group member, giving it standing to bring a defamation action.  That the statements "purported to be based on scientific data," A109, and included a call to action, rather than just being informational, A110, might

well bear on other aspects of a defamation claim, but they do not show that the statements were of and concerning the plaintiffs.

The court below indicated that the evidence showed that some readers took action vis a vis the "plaintiffs specifically," but the court's examples don't support that characterization—they show only that purchases of Maine lobster in general were affected, and that the price of Maine lobster fell by $2.70 per pound. A111. These are effects on the market for lobster as a whole, not effects on the individual plaintiffs specifically. Indeed, reading the court's conclusions on this point—that the of and concerning element was met because the MBAF report "encompassed the entire American lobster industry," A112—it is hard to reach any conclusion other than that the rule that individuals cannot sue for defamation when a large group to which they belong has been criticized is dead in diversity actions pending in the District of Maine. The Court should grant interlocutory review to address that error of law.

### B. The District Court's Analysis of Fact Versus Opinion Also Warrants Review.

The First Amendment bars libel claims based on statements of mere opinion that are not provable as false, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), in that, "[u]nder the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). The district court's analysis of the

"opinion" issue was incorrect, in part, because, as MBAF argues, reports that take positions on scientific controversies without attributing bad faith or accusations of intentional falsehood to other speakers are, as a general matter, ill-suited for litigation in a libel case.

But the rejection of MBAF's opinion argument was wrong for an additional reason. MBAF's report took the position that the overall practices of the various groups fishing for lobster in a wide swath of the Atlantic Ocean posed dangers for an endangered species, and thus provided a reason not to consume that catch. MBAF disclosed this approach and discussed at length the scientific data and government studies and edicts on which it relied in reaching its conclusion. The plaintiffs, for their part, insist that Maine's own lobstermen were the more careful than fishermen from other places and so ought in fairness get an exception from that broader approach. MBAF rejected this plea, concluding that because the fisheries as a whole were harming the continued existence of an endangered species, all uses of the product should be paused until specific responsibility can be assessed. That judgment might be right, or it might be unfair, but it is quintessentially a matter of judgment.

Based on this reasoning, clearly disclosed in the report, MBAF issued a recommendation to "AVOID" Maine lobster. So far as the record discloses, it was that recommendation (item 9 of the allegedly defamatory passages), and not the

various bits of reasoning over which plaintiffs claim to be suing, that caused the economic harm. Recommendations are not "facts" that can be proved true or false. In this regard, the district court's discussion of the opinion issue misses the forest for the trees.

Moreover, several of the "trees" themselves reflect errors of law. For example, the court below faulted MBAF for using the unconditional word "is" instead of "may be" in describing the impact of the overall fishery on the North American Right Whale. A116. But the fact that an opinion is strongly held and expressed—as scientists often do in their public disagreements—does not make it any less an opinion. Similarly, the court said that because the public reacted so strongly to the Report, changing their buying habits and lowering the market price of lobster, the public must have taken the report as stating facts. A122. But the public reaction is equally consistent with the proposition that the buying public (or the wholesalers who have generally followed MBAF's recommendations) respect MBAF's **judgment**—that is, the opinions that MBAF forms based on its synthesis of the applicable scientific evidence.

Finally, the court faulted MBAF for touting the "objective and scientific nature of its methodology" as being itself a reason to determine that the conclusions reached through that methodology must be fact and not opinion. A120. But many groups

issue ratings and scorecards of one kind of another, based on criteria that they publicly identify as being objective, that lead them to conclude that consumers should embrace or avoid various companies or products. "Courts generally have held that claims for defamation based upon ratings or grades fail because ratings or grades cannot be objectively verified as true or false and thus, are opinion." *NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37, 50–51 (Conn. 2020) (cleaned up). *Accord Aviation Charter v. Aviation Research Group/US*, 416 F.3d 864, 871 (8th Cir. 2005) (rating "is a subjective interpretation of multiple objective data points leading to a subjective conclusion about aviation safety"); *Davis v. Avvo, Inc.,* 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018) (lawyer rating system is opinion protected by the First Amendment, not actionable statement of fact); *ZL Techs. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 800 (N.D. Cal. 2010), *aff'd sub nom. ZL Techs., Inc. v. Gartner Group*, 433 Fed. Appx. 547 (9th Cir. 2011) (ratings of companies on four point scale are opinion, not fact); *See also Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 529 (6th Cir. 2007) (credit rating is opinion, not fact, because based on complex factors). If the opinion below were applied in those cases, much content useful to consumers could be suppressed through threats of defamation litigation.

The serious implications of the decision below for speech on significant issues of public policy, beyond the interests of the parties to this case, weigh heavily in

favor of granting MBAF's petition for permission to appeal under 28 U.S.C. § 1292(b).

## CONCLUSION

The petition for leave to appeal should be granted.

Respectfully submitted,

  /s/ Paul Alan Levy
Paul Alan Levy

 Public Citizen Litigation Group
 1600 20th Street, N.W.
 Washington, D.C. 20009
 (202) 588-7725
 plevy@citizen.org

 Attorney for Public Citizen

May 2, 2025

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the type-volume limitation of Rules 5(c)(1) and 29(a)(5) of the Federal Rules of Appellate Procedure because it contains 2,412 words. The brief complies with the typeface and type-style requirements of Rules 32(a)(5) and 32(a)(6) of the Federal Rules of Appellate Procedure because it was prepared using Word Perfect in a proportionally spaced typeface, Times New Roman, 14 point font.

                                                  /s/   Paul Alan Levy

## CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of May, 2025, I am re-filing this proposed amicus brief by the Court's ECF system, which will effect service on counsel for all parties.

        /s/   Paul Alan Levy
Paul Alan Levy
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-7725
plevy@citizen.org