No. 25-8012

# In The
# United States Court of Appeals for the First Circuit

**Monterey Bay Aquarium Foundation,**
*Defendant-Petitioner,*

*v.*

**Bean Maine Lobster, Inc.; Maine Lobstermen's Association; Maine Coast Fishermen's Association, Inc.; Maine Lobster and Processing, LLC d/b/a Atwood Lobster, LLC; Bug Catcher, Inc.,**
*Plaintiffs-Respondents.*

On Petition for Interlocutory Appeal from the
District of Maine (Woodcock, J.)

## OPPOSITION TO
## PETITION FOR PERMISSION TO APPEAL

**VENABLE LLP**

Kevin J. Lipson
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4415
kjlipson@venable.com

**RUPRECHT & BISCHOFF LLP**

Clifford Ruprecht
75 Market Street, Suite 303
Portland, ME 04101
(207) 618-5400
cruprecht@rb-lawyers.com

**VENABLE LLP**

Edward P. Boyle
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 808-5675
epboyle@venable.com

Megan Barbero
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4540
mbarbero@venable.com

Kyle H. Keraga
750 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7650
khkeraga@venable.com

*Counsel for Plaintiffs-Respondents*

# TABLE OF CONTENTS

*Page(s)*

TABLE OF CONTENTS ................................................................................i

TABLE OF AUTHORITIES .......................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

BACKGROUND ........................................................................................4

STANDARD OF REVIEW.........................................................................8

ARGUMENT ...........................................................................................10

    I.   The District Court's Application Of The "Circumstances Of Publication" Exception To The Facts Alleged Does Not Warrant Interlocutory Appeal. ................................................11

    II.   Whether The Aquarium's False Statements Based On Selected Scientific Sources Constitute Fact Or Opinion Does Not Warrant Interlocutory Appeal. .............................20

    III.  Interlocutory Review Of State-Law Issues Would Not Promote Judicial Economy.....................................................26

CONCLUSION ........................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Abramson v. Pataki*,
    278 F.3d 93 (2d Cir. 2002)................................................................18

*ACS Primary Care Phys. Sw., P.A. v. UnitedHealthcare Ins. Co.*,
    26 F.4th 716 (5th Cir. 2022)..........................................................26

*Advance DX, Inc. v. YourBio Health, Inc.*,
    753 F. Supp. 3d 53 (D. Mass. 2024) ............................................24

*Advanced Tech. Corp. v. Instron, Inc.*,
    66 F. Supp. 3d 263 (D. Mass. 2014) ............................................24

*Alexis v. District of Columbia*,
    77 F. Supp. 2d 35 (D.D.C. 1999)..................................................16

*Arcand v. Evening Call Pub. Co.*,
    567 F.2d 1163 (1st Cir. 1977)..................................................2, 13

*Arenholtz v. Bd. of Tr. of Univ. of Ill.*,
    219 F.3d 674 (7th Cir. 2000) ..........................................................9

*Ayyadurai v. Walsh*,
    No. 20-CV-11531-ADB,
    2021 WL 3374915 (D. Mass. Aug. 3, 2021) ...............................17

*Ballard v. Wagner*,
    877 A.2d 1083 (Me. 2005)....................................................3, 20, 21

*Camacho v. P.R. Ports Auth.*,
    369 F.3d 570 (1st Cir. 2004) ........................................................10

*Caraballo-Seda v. Mun. of Hormigueros*,
    395 F.3d 7 (1st Cir. 2005)..........................................................2, 9

*Caron v. Bangor Publishing Co.*,
    470 A.2d 782 (Me. 1984)......................................................20, 21, 24

ii

*Conformis, Inc. v. Aetna, Inc.*,
   58 F.4th 517 (1st Cir. 2023) ...................................................... *passim*

*Cummins v. EG & G Sealol, Inc.*,
   697 F. Supp. 64 (D.R.I. 1988) ............................................................. 27

*Espinal v. Sephora USA, Inc.*,
   22 Civ. 3034 (PAE) (GWG),
   2024 WL 4751279 (S.D.N.Y. Nov. 12, 2024) ...................................... 26

*Fawcett Publications, Inc. v. Morris*,
   377 P.2d 42 (Okla. 1962) ................................................................... 17

*Frazier v. Bickford*,
   No. 14-CV-3843 (SRN/JJK),
   2015 WL 8779872 (D. Minn. Dec. 15, 2015) ...................................... 27

*Garey v. Stanford Mgmt., LLC*,
   319 A.3d 1022 (Me. 2024) .................................................................. 12

*Green v. City of New York*,
   453 F. Supp. 2d 690 (S.D.N.Y. 2006) ................................................ 27

*Hermes Int'l v. Rothschild*,
   590 F. Supp. 3d 647 (S.D.N.Y. 2022) ................................................ 11

*Hudson v. Guy Gannett Broad. Co.*,
   521 A.2d 714 (Me. 1987) ......................................................... 2, 12, 17

*Hulmes v. Honda Motor Co., Ltd.*,
   936 F. Supp. 195 (D.N.J. 1996) ......................................................... 27

*In re Bailey*,
   592 B.R. 400 (1st Cir. BAP 2018) ...................................................... 10

*In re Watson*,
   309 B.R. 652 (1st Cir. BAP 2004) ...................................................... 10

*Kentucky Fried Chicken, Inc. v. Sanders*,
   563 S.W.2d 8 (Ky. 1978) .................................................................... 18

*Koehler v. Bank of Bermuda Ltd.*,
   101 F.3d 863 (2d Cir. 1996) ............................................................... 10

*L & D. of Or., Inc. v. Am. States Ins. Co.*,
  14 P.3d 617 (Or. Ct. App. 2000) .......................................................... 13

*Landino v. Mass. Teachers Ass'n*,
  621 F. Supp. 3d 185 (D. Mass. 2022) ................................................. 17

*Lester v. Powers*,
  596 A.2d 65 (Me. 1991).......................................................................... 24

*Loeb v. Globe Newspaper Co.*,
  489 F. Supp. 481 (D. Mass. 1980) ....................................................... 18

*Lynch v. Christie*,
  No. 2:11CV70-DBH,
  2012 U.S. Dist. LEXIS 165628 (D. Me. Nov. 20, 2012) ...................... 17

*Malone v. WP Co.*,
  No. 3:22-CV-00046,
  2023 WL 6447311 (W.D. Va. Sept. 29, 2023)...................................... 25

*Mamani v. Berzain*,
  825 F.3d 1304 (11th Cir. 2016) ..................................................... 9, 16

*Martin v. Goodrich Corp.*,
  95 F.4th 475 (7th Cir. 2024)................................................................. 26

*McCullough v. Cities Serv. Co.*,
  676 P.2d 833 (Ok. 1984) ....................................................................... 16

*McGillicuddy v. Clements*,
  746 F.2d 76 (1st Cir. 1984)................................................................... 10

*Michaels v. Agape Senior Cmty., Inc.*,
  848 F.3d 330 (4th Cir. 2017) .......................................................... 9, 15

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
  720 F.3d 490 (2d Cir. 2013)................................................... 22, 23, 25

*Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
  63 F.4th 240 (3d Cir. 2023) ........................................................... 22, 25

*Palandjian v. Pahlavi*,
  782 F.2d 313 (1st Cir. 1986)..................................................... *passim*

iv

*Pan Am. Sys., Inc. v. Hardebnergh*,
  871 F. Supp. 2d 6 (D. Me. 2012) .......................................................... 20

*Robinson v. Guy Gannet Publ'g Co.*,
  297 F. Supp. 722 (D. Me. 1969) ............................................................ 12

*Thomas v. Jacksonville Television, Inc.*,
  699 So. 2d 800 (Fla. Dist. Ct. App. 1997) ...................................... 18, 19

*Torrey v. Infectious Diseases Soc'y of Am.*,
  86 F.4th 701 (5th Cir. 2023) ............................................................ 22, 25

*True v. Ladner*,
  513 A.2d 257 (Me. 1986) .................................................................. 21, 24

*United Air Lines Inc. v. Gregory*,
  716 F. Supp. 2d 79 (D. Mass. 2010) ................................................... 9, 15


**Statutes**

14 M.R.S. § 556 (2012)............................................................................ 7

28 U.S.C. § 1292 .................................................................................... 9


**Other Authorities**

1 Sack on Defamation § 4:3.7................................................................ 21

David A. Elder, *Small Town Police Forces, Other Governmental
  Entities and the Misapplication of the First Amendment to the
  Small Group Defamation Theory-A Plea for Fundamental
  Fairness for Mayberry*,
  6 U. Pa. J. Const. L. 881 (2004) ......................................................... 13

Restatement (Second) of Torts § 564A......................................... 2, 13, 14

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Aquarium made false statements about Maine's lobster fishery and urged consumers to boycott Maine lobster. Its strategy worked: consumers understood that the Aquarium's statements applied to the Plaintiffs, five Maine lobster fishing businesses and trade associations. Citing those statements, customers stopped buying lobster from Plaintiffs, harming their businesses and livelihoods. The district court denied the Aquarium's motion to dismiss Plaintiffs' defamation claim, applying settled, fact-bound principles of Maine law.

The court did not announce new rules of defamation law that would threaten First Amendment values, as the Aquarium now suggests. Instead, the court correctly applied the circumstances-of-publication exception to group defamation, explaining that consumers understood the Aquarium's statements to apply to Plaintiffs specifically and stopped purchasing from them as a result. The court also found that Plaintiffs had plausibly alleged that the Aquarium's statements, which disregarded contradictory data and were made to influence consumers, were not protected opinions on matters of scientific debate. Nothing about that decision merits departing from the "general rule

1

prohibiting interlocutory appeals from the denial of a motion to dismiss." *Caraballo-Seda v. Mun. of Hormigueros*, 395 F.3d 7, 8 (1st Cir. 2005).

**I.** The law is firmly established that members of a large group can bring a defamation claim where circumstances known to readers indicate that a defamatory statement has special application to them. *Arcand v. Evening Call Pub. Co.*, 567 F.2d 1163, 1164 (1st Cir. 1977); Restatement (Second) of Torts § 564A; *Hudson v. Guy Gannett Broad. Co.*, 521 A.2d 714, 716 (Me. 1987) (calling this an "essentially factual question"). The district court applied that settled rule and found that Plaintiffs had plausibly alleged "special application of the defamatory matter." A108-A111. Consumers "heeded Seafood Watch's recommendation with regard to the plaintiffs specifically." A111. And when customers—"citing the Seafood Watch red listing"—stopped buying Plaintiffs' lobster, one lost "significant profits," and another saw "sales drop[] 20%." A111 (citing Compl. ¶¶ 83, 85, 87-88).

If the question were *whether* Maine recognizes an exception to the group-libel rule where the defamatory statements have particular application to the plaintiffs, the Aquarium might have a controlling

question of law. But all agree that this exception exists. Instead, the Aquarium contests the *extent* of the special-application exception, arguing that Plaintiffs' group is too large to establish special application in this case. This fact-specific question of how the group-libel rule applies to a particular group is a "classic example" of a claim better left to an appeal of a final order. *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986). And no court has held that group size is a per se bar to a defamation claim. This Court should decline to do so on interlocutory appeal, particularly where the question is one of Maine state law.

**II.** The district court also correctly examined the facts to find the Aquarium's statements could be construed as objectively verifiable facts and not as protected scientific opinions. In Maine, as elsewhere, "a statement that can reasonably be understood as either fact or opinion is sufficient to survive a motion to dismiss." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 534 (1st Cir. 2023) (Massachusetts law); *Ballard v. Wagner*, 877 A.2d 1083, 1087–88 (Me. 2005) (Maine law). Thus, Maine courts do not afford blanket protection to all statements concerning scientific matters. And elsewhere, courts have done so only when such statements are part of an "ongoing scientific discourse about which

there is considerable disagreement," published in a scientific journal, and accompanied by "an accurate description" of the data. *Conformis*, 58 F.4th at 534. Misleading statements made to influence consumers would not qualify in any event.

As the district court emphasized, the Aquarium touted its "science-based ratings," but it declined to qualify its statements, discounted contradictory scientific evidence, and distorted its citations. A120-A121. It also made these statements in a document designed to influence consumer sentiment, not a scientific journal. The context of the Aquarium's statements, including where they were "published and the audience to which [they were] presented," makes clear that the Aquarium "cannot take refuge in the hallowed halls of scientific debate." *Conformis*, 58 F.4th at 534.

## BACKGROUND

Lobster fishing is a touchstone of Maine's cultural identity, offering "a thread that connects families to prior generations" and the region. Compl. ¶ 2, ECF No. 1.[1] Maine's lobster industry adds $1 billion

---

[1] All ECF citations contained herein reference the district court docket. *See Bean Maine Lobster, Inc. v. Monterey Bay Aquarium Found.*, No. 2:23-cv-00129-JAW (D. Me.).

to the state treasury every year and supports thousands of jobs. *Id.* ¶¶ 3, 4. As "responsible stewards of the State's natural resources," Maine lobstermen "have long led efforts to make lobster fishing environmentally sustainable." *Id.* ¶¶ 6, 29. Among such efforts, they have pioneered sustainable fishing and trapping practices to protect the endangered North Atlantic right whale. *Id.* ¶¶ 30–33.

Plaintiffs-Respondents are a family fishing company, two businesses that sell Maine lobster, and two trade associations that represent lobstermen throughout the state (collectively, "Plaintiffs"). *Id.* ¶¶ 14–18. They are deeply involved in the lobster industry and participate in sustaining this cultural heritage. *Id.* They have lost revenue, relationships, and goodwill as a direct result of the Aquarium's false statements about their fishing practices. *Id.* ¶¶ 80–92.

In September 2022, the Aquarium placed Maine-caught lobster on the Seafood Watch "red" list, "falsely depict[ing] the Maine lobster fishery as being directly responsible for right whale injuries and mortalities." *Id.* ¶ 8. In issuing this report, "the Aquarium leveraged its significant influence over public opinion and the commercial decisions of major lobster purchasers, using its public platform to pressure those

5

parties into cutting off business with Plaintiffs." *Id.* ¶ 12; *see also* ¶¶ 95–96. Consumers understood those statements to apply to Plaintiffs, who soon suffered acute commercial harms. *Id.* ¶¶ 80–92. Plaintiff Atwood "lost significant profits" when one of its major purchasers stopped purchasing its lobster "citing the Aquarium's 'red' listing." *Id.* ¶ 83. Plaintiff Bug Catcher saw "an estimated 20% decline in [its] business" as a result "of the 'red' rating." *Id.* ¶ 85. The other plaintiffs, too, experienced commercial losses because of the Aquarium's statements. *Id.* ¶¶ 86–89.

The Aquarium represented that its statements were the product of a "rigorous, transparent, science-based process" based on "all available scientific data." *Id.* ¶ 8. But the Aquarium "was in possession of scientific data contradicting its claims." *Id.* ¶ 91. Leading studies attributed right whale fatalities not to Maine lobster fishing, but to climate change, seaborne ship strikes, and Canadian fishing practices. *Id.* ¶¶ 57, 64–68. Indeed, the Aquarium soon acknowledged that few entanglements could be tied to any specific location, and simply concluded that "the lobster fishery may be a part" of the problem. *Id.*

¶¶ 68–69. In short, the Aquarium relied on speculation, but presented it as science to support its false narrative.

To redress the ongoing harms they had suffered because of the Aquarium's statements, Plaintiffs sued the Aquarium for defamation. *Id.* ¶¶ 93–113. On May 22, 2023, the Aquarium moved to dismiss under Rule 12(b)(6) and Maine's anti-SLAPP statute, 14 M.R.S. § 556 (2012), among other grounds. ECF No. 19.

On February 6, 2025, the court entered a 137-page decision denying that motion. A1–A137. The court held that Plaintiffs had alleged sufficient facts to plead defamation under settled Maine law. A102-A129. As relevant, it concluded that Plaintiffs' allegations showed that consumers actually understood the Aquarium's statements to apply to Plaintiffs, A111, and that reasonable consumers could interpret the statements as either fact or opinion. A123. It also denied the anti-SLAPP motion, finding Plaintiffs plausibly alleged that the Aquarium's statements were "devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury." A92–A100.

The Aquarium filed a Section 1292(b) motion asking the district court to certify that order denying for interlocutory appeal.[2] On April 15, 2025, the district court certified its order, concluding that the following two issues satisfied Section 1292(b):

1.    Whether the "of and concerning" exception to the group libel rule applies to defamation claims brought by a plaintiff group consisting of lobstermen who each suffered similar demonstrable economic harms as a consequence of defamatory statements made against the American lobster as a commercial product;

2.    Whether, accepting the allegations of the complaint as true at the motion to dismiss stage, statements constitute protected scientific opinion as a matter of law where as a matter of fact, the complaint alleges the scientific assertion is factually false and the speaker deliberately ignored and did not disclose the existence of contradictory evidence of which it was aware at the time it made the statements.

A144.[3]  The Aquarium petitioned this Court for interlocutory appeal.

## STANDARD OF REVIEW

Interlocutory appeal under Section 1292(b) requires that an order meet three strict criteria:

---

[2] On February 27, 2025, the Aquarium appealed the denial of its anti-SLAPP motion (1st Cir., No. 25-1206).

[3] The Aquarium recasts these questions in terms far broader than the district court's certification order. *Compare* Pet. 3, *with* A144.

(1)  The order must "involve[e] a controlling question of law";

(2)  As to which there is a "substantial ground for difference of opinion"; and

(3)  For which "an immediate appeal may materially advance the ultimate termination of the litigation."

*Caraballo-Seda v. Mun. of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) (quoting 28 U.S.C. § 1292(b)). For a Section 1292(b) appeal to proceed, "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Arenholtz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000).

First, the order must present "difficult and pivotal questions of law not settled by controlling authority." *Palandjian*, 782 F.2d at 314. "The issue must relate to the actual legal principle itself, not the application of that principle to a particular set of facts." *United Air Lines Inc. v. Gregory*, 716 F. Supp. 2d 79, 92 (D. Mass. 2010). It must involve "an abstract legal issue that the court of appeals can decide quickly and cleanly," *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016), without regard to "whether the district court properly applied settled law to the facts," *Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 341 (4th Cir. 2017) (cleaned up).

9

Second, "[e]ven when the issue is controlling, it is rare that a substantial ground for difference of opinion exists." *In re Bailey*, 592 B.R. 400, 410 (1st Cir. BAP 2018) (cleaned up). Rather, substantial grounds for disagreement may exist where there is "marked litigant confusion and disagreement" or a "stark division among the circuits." *Id.* at 411 (cleaned up).

Third, an immediate appeal must "'greatly assist' in resolving the underlying matter" and "not unnecessarily delay [its] resolution." *In re Watson*, 309 B.R. 652, 660 (1st Cir. BAP 2004) (alterations omitted). "The fact that appreciable trial time may be saved is not determinative, for such would often be true of interlocutory appeals." *Palandjian*, 782 F.2d at 314; *accord Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) (holding certification appropriate only where "an intermediate appeal may avoid protracted litigation").

## ARGUMENT

The denial of the Aquarium's motion to dismiss does not merit interlocutory appeal, a remedy "used sparingly and only in exceptional circumstances." *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984). Such appeals are "hens' teeth rare," *Camacho v. P.R. Ports Auth.*,

369 F.3d 570, 573 (1st Cir. 2004), suitable only for "difficult and pivotal questions of law not settled by controlling authority." *Palandjian*, 782 F.2d at 314. No such questions are presented here.

The Aquarium insists that the district court announced bold new principles of defamation law, with broad First Amendment implications. The court did nothing of the sort. Its order applied settled Maine law to the facts—recognizing that the bar for group defamation claims is high, but applying an established exception. That order is not suitable for interlocutory appeal, and "nothing suggests that the mere existence of First Amendment interests loosens the standards of § 1292(b)." *Hermes Int'l v. Rothschild*, 590 F. Supp. 3d 647, 650, 654 (S.D.N.Y. 2022).[4]

## I.    The District Court's Application Of The "Circumstances Of Publication" Exception To The Facts Alleged Does Not Warrant Interlocutory Appeal.

The district court applied the well-established "circumstances of publication" exception to the general rule against large-group defamation claims. The Aquarium does not dispute *whether* this is the

---

[4] Indeed, Maine provides a means for the Aquarium to redress First Amendment concerns: Its Anti-SLAPP motion. Because that motion is already on appeal, the Aquarium can litigate its First Amendment concerns in due course.

11

proper test. All agree that it is. Instead, the Aquarium urges this Court to *extend* the reach of the exception, in a departure from Maine law and this Court's precedent, to hold that large-group defamation claims are barred as a matter of law for groups of a certain size. The Aquarium's disagreement with the court's application of this exception to the facts is not an issue for interlocutory review.

**1.** In Maine, as elsewhere, statements "of and concerning" the plaintiff can support a defamation claim. *Garey v. Stanford Mgmt., LLC*, 319 A.3d 1022, 1027 n.3 (Me. 2024). A statement "concerns" the plaintiff when "its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer" to them. *Hudson v. Guy Gannett Broad. Co.*, 521 A.2d 714, 717 (Me. 1987). That "factual analysis" turns on how the statement was actually understood—not how "the average or ordinary recipient of the communication" would perceive it. *Id.* It is enough that "at least one person" understood the statement to concern the plaintiff. *Id.*; *Robinson v. Guy Gannet Publ'g Co.*, 297 F. Supp. 722, 726 (D. Me. 1969) (explaining that when a defamatory statement does not facially refer to the plaintiff, "he must show that it was actually understood as referring to him").

The general rule against large-group defamation has never been a categorical bar, barring claims as a matter of law based on group size alone. Instead, defamation claims involving statements that concern a group may proceed where:

(a) the group or class is so small that the matter can reasonably be understood to refer to the member, or

(b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

Restatement (Second) of Torts § 564A. "Even in a large group context," then, "circumstances known to readers, viewers or hearers where a defamation claim is published may equate to individual reference as effective as if plaintiff alone were specified."[5] *See* Restatement § 564A cmt. d; *accord Arcand,* 567 F.2d at 1164; *L & D. of Or., Inc. v. Am. States Ins. Co.*, 14 P.3d 617, 621 n.3 (Or. Ct. App. 2000) (holding defamation of a group may be actionable if "the words are reasonably understood by the hearers or readers to be directed individually at [plaintiffs]").

---

[5] David A. Elder, *Small Town Police Forces, Other Governmental Entities and the Misapplication of the First Amendment to the Small Group Defamation Theory-A Plea for Fundamental Fairness for Mayberry*, 6 U. Pa. J. Const. L. 881, 919 (2004).

The district court's analysis proceeded along this well-paved road. The court started from the correct proposition that group defamation claims are uncommon. A104-A105. It then applied the second exception and found Plaintiffs had plausibly alleged the Aquarium's statements were reasonably understood as referring to them. A107-A112. The court was right to do so: Plaintiffs alleged that the Aquarium "use[d] its public platform to pressure those parties into cutting off business with Plaintiffs," Compl. ¶ 12, and that consumers, restaurants, and wholesalers stopped purchasing Plaintiffs' products due to the Aquarium's report, *id.* ¶¶ 81–84. Indeed, one major Atwood customer "cit[ed] the Aquarium's 'red' listing" as its reason to cut ties, *id.* ¶ 83, and Bug Catcher lost 20% of its business as a result "of the 'red' rating," *id.* ¶ 85. These allegations reveal that "circumstances . . . known to the readers" let Plaintiffs' customers and business partners connect the dots. Restatement (Second) of Torts § 564A cmt. d. That fact-bound analysis broke no new legal ground.

**2.** The Aquarium argues that the complaint does not plausibly allege "personal application" to the plaintiffs. Pet. 15. But an issue is only appropriate for Section 1292(b) certification if it "relate[s] to the

14

actual legal principle itself, not the application of that principle to a particular set of facts." *Gregory*, 716 F. Supp. 2d at 92; *accord Michaels*, 848 F.3d at 341. Because the Aquarium does not dispute the *existence* of the "circumstances of publication" exception, only its *application*, interlocutory appeal is unwarranted.

This Court's decision in *Palandjian*, is instructive. There, the plaintiff argued for a duress exception to the statute of limitations. 782 F.2d at 313. The district court denied summary judgment and certified its order for interlocutory appeal. In rejecting the interlocutory appeal,[6] this Court explained that "the question of *whether* Massachusetts would recognize the principle of duress as tolling the statute would be a good example of a 'controlling question of law.'" *Id.* at 314. By contrast, "the question of the *extent* of such an exception is a classic example of what is not to be raised by [interlocutory] appeals." *Id.*

So too here. If the question were *whether* Maine recognizes an exception to the group-libel rule where the defamatory statements have particular application to the plaintiffs, the Aquarium might have a

---

[6] The Court initially approved the appeal in *Palandjian*, but a later panel reversed that decision.

controlling question of law. But all agree that large group defamation claims can only proceed under specific circumstances. The *extent* of the particular-application exception for group defamation—and its application to the facts at hand—is a "classic example" of a claim better reserved for appeal from a final order. *Id.* It is not "an abstract legal issue that the court of appeals can decide quickly and cleanly." *Mamani*, 825 F.3d at 1312. Discovery is necessary to answer these questions; immediate appeal would shortcut that process.

**3.** In attempting to show a substantial difference of opinion, the Aquarium collapses the Restatement exceptions into a per se rule: that group size is a categorical bar to defamation claims. Pet 12-13, 16-17. That has never been the law.

Courts around the country have held that "[t]he numerical size of the group is a consideration, but is not the only factor to be considered." *McCullough v. Cities Serv. Co.*, 676 P.2d 833, 837 (Ok. 1984). The caselaw does "not establish a 'bright line' above which a defamed group is 'too big' for an unnamed individual member to sue for defamation." *Alexis v. District of Columbia*, 77 F. Supp. 2d 35, 41 (D.D.C. 1999). Instead, courts have followed "rules of thumb," *id.*, scrutinizing the

16

allegations and facts in each case to determine whether the circumstances of publication reveal a particular application to the plaintiff. *See, e.g., Fawcett Publications, Inc. v. Morris*, 377 P.2d 42, 51-52 (Okla. 1962) (allowing claim where plaintiff was "well known and identified in connection with" defamatory statement about 60-70 member football team); *Landino v. Mass. Teachers Ass'n*, 621 F. Supp. 3d 185, 189–91 (D. Mass. 2022) (reviewing articles, websites, emails, documents); *Lynch v. Christie*, No. 2:11CV70-DBH, 2012 U.S. Dist. LEXIS 165628, at *5–12 (D. Me. Nov. 20, 2012) (examining affidavits, police records, deposition testimony); *see also Hudson*, 521 A.2d at 717 (finding exception satisfied by "proof from an actual recipient of the publication concerning what the recipient reasonably believes").

The Aquarium argues for a per se bar on the theory that there can be no special application in a large group where the statement "applies to each individual equally." Pet. 16. But its own cases underscore the absence of such a rule. The cases it offers dismissing group defamation claims did so only *after* considering whether plaintiffs had alleged special application to themselves. *See Ayyadurai v. Walsh*, No. 20-cv-11531-ADB, 2021 WL 3374915, at *11–12 (D. Mass. Aug. 3, 2021)

(plaintiff failed to allege statements during and after a political rally had "special application" to himself); *Loeb v. Globe Newspaper Co.*, 489 F. Supp. 481, 383–84 (D. Mass. 1980) (comment about "saleswomen" did not suggest "'special application' or 'particular reference' to the plaintiffs" (internal citations omitted)); *Abramson v. Pataki*, 278 F.3d 93, 102 (2d Cir. 2002) (concluding that statement regarding "65% of the personnel on the floor . . . would probably not be deemed to apply to any individual" because "none of the individual appellants was directly or impliedly identified").[7] Group size alone was not dispositive.

The Aquarium's lead case, *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800 (Fla. Dist. Ct. App. 1997), reveals the flaw in its position. In *Thomas*, the Florida appellate court recognized that the Restatement "contemplates a situation such as this, in which defamation of commercial net fishing has personal application to each individual who follows the occupation." 699 So. 2d at 805. But the court dismissed the

---

[7] The Aquarium also cites *Kentucky Fried Chicken, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978) (per curiam). Even at face value, *Sanders* is distinguishable because there was no allegation that customers understood the statements to refer to the plaintiff's business or that the store lost customers as a result.

complaint for *factual* insufficiency—finding the plaintiffs failed to allege particular application to them, not that their group was too large as a matter of law. *Id.* And the facts there do not resemble the facts here: The Thomas plaintiffs filed suit on behalf of a statewide class of commercial net fishermen—offering no allegations that customers had associated them with the challenged advertisements. *Id.* at 802–03.

* * *

Courts around the country have held that group defamation claims may proceed if the circumstances of publication lead to a particular application of the statement to the plaintiff. That is a high bar that protects First Amendment values and often leads district courts to grant summary judgment or dismiss group-defamation claims. But it is not insurmountable. The district court correctly applied this exception to the facts alleged—facts that distinguish this case from the cases the Aquarium cites by establishing that consumers actually understood the Aquarium's false statements to apply to *these Plaintiffs*. In urging this Court to impose a new, categorical bar on defamation claims involving groups above a certain size, the Aquarium would snuff out that narrow but important exception.

19

## II.    Whether The Aquarium's False Statements Based On Selected Scientific Sources Constitute Fact Or Opinion Does Not Warrant Interlocutory Appeal.

The district court conducted a fact-bound analysis and found that the Aquarium's statements were not protected opinion, notwithstanding their citations to scientific sources. Nothing about that decision warrants immediate review. Indeed, the second certified question asks whether false scientific statements are protected where, "*as a matter of fact*, . . . the speaker deliberately ignored and did not disclose the existence of contradictory evidence." A144 (emphases added). This question presents no controlling issues of law, much less the sort of "pure" legal issue necessary for a Section 1292(b) appeal. And there is no substantial difference of opinion, only cases reaching different results on different facts.

**1.** In Maine, courts "look to the totality of the circumstances and to whether the statement was intended to state an objective fact or a personal observation." *Ballard*, 877 A.2d at 1087–88; *Pan Am. Sys., Inc. v. Hardebnergh*, 871 F. Supp. 2d 6, 19 (D. Me. 2012). "If the average reader could reasonably understand the statement as either fact or opinion," its characterization is a factual issue. *Caron v. Bangor*

20

*Publishing Co.*, 470 A.2d 782, 784 (Me. 1984). Thus, "a statement that can reasonably be understood as either fact or opinion is sufficient to survive a motion to dismiss." *Conformis, Inc.*, 58 F.4th at 531; *accord Ballard*, 877 A.2d at 1087–88 (Maine law); *True v. Ladner*, 513 A.2d 257, 261–62 (Me. 1986) (Maine law).

In its effort to construct a controlling legal question, the Aquarium cites Robert Sack's defamation treatise. Pet. 20-21. But it omits key limiting language. While the treatise notes that most jurisdictions treat the fact/opinion question as a matter of law, it acknowledges that:

> Some state courts . . . take the position that . . . where the alleged defamatory remarks could be determined either as fact or opinion, the court cannot say as a matter of law that the statements were not understood as fact.

1 Sack on Defamation § 4:3.7. Maine is one such state: The Supreme Judicial Court has held that "[i]f the average reader could reasonably understand the statement as either fact or opinion," its classification is a question of fact, not a matter of law. *Ballard*, 877 A.2d at 1087 (quoting *Caron*, 470 A.2d at 784).

**2.** The Aquarium asserts that statements about scientific matters are not actionable as a matter of law. The Maine courts have never held as much. Elsewhere, courts have protected such statements in limited

21

circumstances when they are made "as part of an ongoing scientific discourse about which there is considerable disagreement," drawn "from non-fraudulent data, based on accurate descriptions of the data and methodology," and published in scientific journals "directed to the relevant scientific community." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497–98 (2d Cir. 2013); *e.g.*, *Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 63 F.4th 240, 246 (3d Cir. 2023); *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023).

This Court's decision in *Conformis* demonstrates that dichotomy. In that case, this Court characterized the protections for statements of scientific debate not as a legal issue, but rather, as a "suggestion" that "has some force." *Conformis, Inc.*, 58 F.4th at 534. The court declined to hold that *all* scientific statements are protected as a matter of law— holding instead that a court "must take into account the statement's context, including the medium in which the statement was published and the audience to which it was presented." *Id.* Such statements may be opinion if they involve "ongoing scientific discourse about which there is considerable disagreement," or are presented in an expert

22

journal "alongside an accurate description" of the underlying data. *Id.* at 534. But when a defendant purports to apply "objective professional or scientific standards," without an accurate presentation of the data, its statements are not protected. *Id.*

The Aquarium's statements are a far cry from the type of scientific debate that has been characterized as opinion. The Seafood Watch ratings program is a commercial venture that "seeks to influence the seafood-purchasing decisions of consumers and businesses." Compl. ¶ 7. The Aquarium's statements are like the unprotected "explanatory document" addressed in *Conformis*, which was issued by an insurance company to inform "prospective patients and healthcare provides about reimbursements." 58 F.4th at 534. The statements here are not a "publication[] directed to the relevant scientific community" to enable "other scientists" to "analyz[e] or refut[e] the soundness of the experimental design or the validity of the inferences." *ONY, Inc.*, 720 F.3d at 496–97. Moreover, the Aquarium both discounted evidence offered by Plaintiffs and distorted its citations to the underlying data. A120. The "context" of these statements, including their "medium" and

"audience," makes clear that the Aquarium "cannot take refuge in the hallowed halls of scientific debate." *Conformis*, 58 F.4th at 534.

**3.** There is no merit to the Aquarium's claim that courts are divided on this issue. Pet. 22-24. Any court to consider whether the Aquarium's statements were protected would reach the same conclusion as the district court: A document aimed at driving consumers' seafood purchasing decisions is not protected scientific debate—particularly when it selectively distorts and excludes the underlying scientific data.

First, Maine law is settled: the classification of statements that could be regarded as either fact or opinion is a factual matter, not a question of law. *See Caron*, 470 A.2d at 785; *Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991); *True*, 53 A.2d at 262.

Second, other district courts in this Circuit have rejected similar efforts by defendants to characterize their commercial statements as "scientific debate" to avoid liability. *See Advance DX, Inc. v. YourBio Health, Inc.*, 753 F. Supp. 3d 53, 64 (D. Mass. 2024) (scientific document republished for promotional purposes not protected); *Advanced Tech. Corp. v. Instron, Inc.*, 66 F. Supp. 3d 263, 271 (D. Mass. 2014) (article published in scientific magazine without methodology or data not

24

protected). And the mere fact that courts have applied the same law to different facts and reached different conclusions does not create a substantial difference of opinion. *Cf. Malone v. WP Co.*, No. 3:22-cv-00046, 2023 WL 6447311, at *4 (W.D. Va. Sept. 29, 2023) (statements involving "scientific debate over the efficacy of COVID-19 vaccines" protected).

Third, the district court's findings align with the law of other jurisdictions. Every out-of-circuit decision cited by the Aquarium draws the same lines as the district court here: Tentative statements meant to push the boundaries of science are protected, while statements applying settled science to further commercial ambitions are not. *See, e.g., ONY, Inc.*, 720 F.3d at 497; *Pacira BioSciences, Inc.*, 63 F.4th at 246; *Torrey*, 86 F.4th at 704.

The Aquarium cannot manufacture substantial grounds for a difference in opinion where none exists. This Court should reject the Aquarium's effort to characterize its misleading statements as vaunted scientific debate.

### III.    Interlocutory Review Of State-Law Issues Would Not Promote Judicial Economy.

Immediate appeal will not materially advance this case. Even if the Aquarium had raised controlling questions of law (which it has not), they would be questions of *Maine law*. Such questions can only be definitively answered by the Supreme Judicial Court of Maine. *See, e.g.*, *Martin v. Goodrich Corp.*, 95 F.4th 475, 477–78 (7th Cir. 2024) (certifying to Supreme Court of Illinois in Section 1292(b) appeal); *ACS Primary Care Phys. Sw., P.A. v. UnitedHealthcare Ins. Co.*, 26 F.4th 716, 719 (5th Cir. 2022) (same, for Supreme Court of Texas). Neither certified question features a novel or unsettled legal issue, so there is no need to certify them to the Maine Supreme Court. And there is even less reason to grant an interlocutory appeal here.

Courts nationwide recognize that "certifying a question of state law to a federal circuit court inherently poses a substantial risk of protracting a litigation." *Espinal v. Sephora USA, Inc.*, 22 Civ. 3034 (PAE) (GWG), 2024 WL 4751279, at *4 (S.D.N.Y. Nov. 12, 2024). That is because federal courts addressing issues of state law must predict how the state's high court might rule. In undertaking that uncertain enterprise, "the First Circuit . . . would find itself in no better position

to make a determination concerning state law than [the district court] finds itself." *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64, 70 (D.R.I. 1988). An interlocutory appeal, therefore, would be a waste of time and resources. As the District of Rhode Island explained in *Cummins*:

> While wasted time and money are always a possibility with interlocutory appeals, the danger is greatly exacerbated when certification to a state court is likely. Section 1292(b) must not be used to transmogrify a legitimate cause of action into a legal pinball bouncing from court to court in the federal and state judicial systems.

*Id.* at 71; *accord Green v. City of New York*, 453 F. Supp. 2d 690, 747–48 (S.D.N.Y. 2006); *Hulmes v. Honda Motor Co., Ltd.*, 936 F. Supp. 195, 211 (D.N.J. 1996) ("[T]he Third Circuit is in no better position to make such a prediction than is this court.").[8]

So too here. Because this case turns on questions of Maine law, this Court can only predict how the Supreme Judicial Court would rule. Because immediate appeal will not materially advance the termination of this litigation, this case should proceed through district court in the

---

[8] District courts around the country have denied interlocutory appeal on this basis. *Frazier v. Bickford*, No. 14-CV-3843 (SRN/JJK), 2015 WL 8779872, at *5 (D. Minn. Dec. 15, 2015) (collecting cases).

ordinary course. That court remains "free to develop the facts further, to certify questions to the Supreme Judicial Court, or to proceed to decide other issues." *Palandjian*, 782 F.2d at 314.

## CONCLUSION

This Court should deny the Aquarium's petition for permission to appeal.

Dated:      May 5, 2025                By: */s/ Megan Barbero*

VENABLE LLP

Megan Barbero (Bar No. 1136991)
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4540
mbarbero@venable.com

Edward P. Boyle (Bar No. 51191)
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 808-5675
epboyle@venable.com

Kevin J. Lipson (Bar No. 1215936)
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4415
kjlipson@venable.com

Kyle H. Keraga (Bar No. 1214412)
750 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7650
khkeraga@venable.com

28

RUPRECHT & BISCHOFF LLP

Clifford Ruprecht (Bar No. 74826)
75 Market Street, Suite 303
Portland, ME 04101
(207) 618-5400
cruprecht@rb-lawyers.com

*Attorneys for Plaintiffs-Respondents.*

## CERTIFICATE OF COMPLIANCE

This Opposition complies with the type-volume limitations of Fed. R. App. P. 5(c)(1) because it contains exactly 5,172 words, and does not exceed 5,200 words. It also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally-spaced typeface using Microsoft Word in size 14 Century Schoolbook font.

Dated:     May 5, 2025        By: */s/ Megan Barbero* _____

## CERTIFICATE OF SERVICE

I certify that on May 5, 2025, I electronically filed the foregoing Opposition with the Clerk of Court for the United States Court of Appeals for the First Circuit via the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users, and that service will be accomplished electronically through the appellate CM/ECF system.

Dated:        May 5, 2025                By: */s/ Megan Barbero*