25-8012

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### BEAN MAINE LOBSTER, INC.; MAINE LOBSTERMEN'S ASSOCIATION; MAINE COAST FISHERMEN'S ASSOCIATION, INC.; MAINE LOBSTER AND PROCESSING, LLC, d/b/a Atwood Lobster, LLC.; BUG CATCHER, INC.,

Plaintiffs – Respondents,

v.

### MONTEREY BAY AQUARIUM FOUNDATION,

Defendant – Petitioner.

On Appeal from the United States District Court for the District of Maine
Case No. 2:23-cv-00129-JAW (Hon. John A. Woodcock, Jr.)

### BRIEF OF PROPOSED AMICI CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, NEW ENGLAND FIRST AMENDMENT COALITION, MAINE CENTER FOR PUBLIC INTEREST REPORTING, AND MAINE PRO CHAPTER, SOCIETY FOR PROFESSIONAL JOURNALISTS IN SUPPORT OF DEFENDANT'S PETITION FOR PERMISSION TO APPEAL

Lisa Zycherman*
Mara Gassmann*
Abigail Sintim*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Ste. 1020
Washington, D.C. 20005
Phone: 202-795-9300
lzycherman@rcfp.org
  *Of Counsel

Sigmund D. Schutz, Esq., #80591
Alexandra A. Harriman, Esq., #1196232
Preti Flaherty, LLP
One City Center
Portland, ME 04101
Phone: 207-791-3000
sschutz@preti.com
aharriman@preti.com

*Counsel for Proposed Amici Curiae*

# CORPORATE DISCLOSURE STATEMENTS

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association of reporters and editors with no parent corporation and no stock.

The New England First Amendment Coalition is a not-for-profit organization with no parent corporation and no stock.

The Maine Center for Public Interest Reporting is a non-profit organization with no parent corporation and no stock.

The Maine Pro Chapter, Society of Professional Journalists is a Maine-based chapter of the non-profit Society of Professional Journalists and has no stock.

22992730.1

# TABLE OF CONTENTS

**Page:**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................... iii

IDENTITY AND INTEREST OF AMICI CURIAE ................................................ 1

SOURCE OF AUTHORITY TO FILE .......................................................... 1

INTRODUCTION ......................................................................... 1

ARGUMENT ............................................................................. 2

I.     Immediate review is warranted because the unprecedented application of the group libel rule below threatens to chill news reporting ...................... 2

II.    Immediate review is needed to protect non-actionable opinion on matters of scientific debate from this break with precedent ........................... 8

CONCLUSION ........................................................................... 11

CERTIFICATION OF COMPLIANCE ......................................................... 13

CERTIFICATE OF SERVICE .............................................................. 14

APPENDIX ............................................................................. 15

22992730.1

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
   37 F.3d 996 (3d Cir. 1994) ................................................4

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
   514 U.S. 1063 (1995)......................................................4

*Arcand v. Evening Call Publ'g Co.*,
   567 F.2d 1163 (1st Cir. 1977)........................................3, 4

*Arthur v. Offit*,
   No. 01:09-cv-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010) .....................10

*Auvil v. CBS "60 Minutes"*,
   836 F. Supp. 740 (E.D. Wash. 1993)................................10

*Auvil v. CBS "60 Minutes"*,
   67 F.3d 816 (9th Cir. 1995) ..........................................10

*Chapman v. Rideout*
   568 A.2d 829 (Me.1990)................................................4

*Church of Scientology of Cal. v. Flynn*,
   744 F.2d 694 (9th Cir. 1984) .........................................5

*Hudson v. Guy Gannett Broad. Co.*,
   521 A.2d 714 (Me. 1987)............................................2, 3

*Immuno AG. v. Moor-Jankowski*,
   567 N.E.2d 1270 (N.Y. 1991)........................................10

*Lester v. Powers*,
   596 A.2d 65 (Me. 1991)................................................4

22992730.1

*Mich. United Conservation Clubs v. CBS News*,
485 F. Supp. 893 (W.D. Mich. 1980) ...................................................6

*Mich. United Conservation Clubs v. CBS News*,
665 F.2d 110 (6th Cir. 1981) .............................................................6

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990)............................................................................9

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964).........................................................................3

*Neiman- Marcus v. Lait*,
13 F.R.D. 311 (S.D.N.Y. 1952) ...........................................................4

*O'Brien v. Williamson Daily News*,
735 F. Supp. 218 (E.D. Ky. 1990) ......................................................7

*O'Brien v. Williamson Daily News*,
931 F.2d 893 (6th Cir. 1991) .............................................................7

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
720 F.3d 490 (2d Cir. 2013) ..............................................................9

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
953 F.2d 724 (1st Cir. 1992)..............................................................9

*Piccone v. Bartels*,
785 F.3d 766 (1st Cir. 2015)..............................................................9

*Provisional Gov't of New Afrika v. ABC, Inc.*,
609 F. Supp. 104 (D.D.C. 1985).........................................................6

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015).........................................................................8

*Riley v. Harr*,
292 F.3d 282 (1st Cir. 2002)..............................................................9

*Riss & Co. v. Ass'n of Am. R.R.s*,
187 F. Supp. 323 (D.D.C 1960).........................................................7

22992730.1

*Robinson v. Guy Gannett Publ'g Co.*,
297 F. Supp. 722 (D. Me. 1969) ............................................................3

*Schuster v. U.S. News & World Rep., Inc.*,
459 F. Supp. 973 (D. Minn. 1978)......................................................6, 7

*Schuster v. U.S. News & World Rep., Inc.*,
602 F.2d 850 (8th Cir. 1979) ...............................................................6

*Serv. Parking Corp. v. Wash. Times Co.*,
92 F.2d 502 (D.C. Cir. 1937).............................................................3, 6

*Spelson v. CBS, Inc.*,
581 F. Supp. 1195 (N.D. Ill. 1984) .....................................................10

*Spelson v. CBS, Inc.*,
757 F.2d 1291 (7th Cir. 1985) .............................................................10

*Sullivan v. Chester Water Auth.*,
No. 2:22-CV-00147-JDL, 2022 WL 2901068 (D. Me. July 22, 2022)...............3

*Sumner v. Buel*,
12 Johns. 475 (N.Y. Sup. Ct. 1815)......................................................3

*Underwager v. Salter*,
22 F.3d 730 (7th Cir. 1994) ..................................................................9

*United States v. Regeneron Pharms., Inc.*,
2023 WL 8599986 (1st Cir. Dec. 11, 2023) ........................................8

*Weatherhead v. Globe Int'l, Inc.*,
832 F.2d 1226 (10th Cir. 1987) ........................................................4, 6

**Statutes:**

28 U.S.C. §1292 ..................................................................................1

**Other Authorities:**

Comment, *Group Defamation and Individual Actions: A New Look at an Old Rule*,
71 Calif. L. Rev. 1532 (1983)..............................................................5

22992730.1

Emily Bader, *At the Root of an Epidemic in Maine: a Prescription Pad*, Sun Journal (Apr. 10 2022) ............................................................................7

Kay Neufeld, *Freight Railroads Police Themselves and Inspect Their Own Tracks. Some Say a Disaster Is Inevitable.*, Press Herald (Oct. 8, 2023) ........................7

**Treatises:**
Restatement (Second) of Torts § 564A (1977).....................................................4, 5

22992730.1

## IDENTITY AND INTEREST OF AMICI CURIAE

Proposed amici curiae are the Reporters Committee for Freedom of the Press ("Reporters Committee"), New England First Amendment Coalition, Maine Center for Public Interest Reporting, and Maine Pro Chapter, Society of Professional Journalists (together, "amici"), which also filed below in support of the District Court's certification. Amici are organizations that advocate on behalf of the press and have an interest in the correct application of controlling law on issues of First Amendment importance, including new interpretations of defamation law principles that may chill journalists' ability to publish news and commentary.[1]

## SOURCE OF AUTHORITY TO FILE

Defendant-Petitioner and Plaintiffs-Respondents do not oppose the filing of this amici curiae brief; amici nevertheless file the accompanying motion requesting leave of the Court to file this brief.

## INTRODUCTION

The Monterey Bay Aquarium Foundation's ("MBAF") petition under 28 U.S.C. § 1292(b) raises two issues of importance on controlling matters of law that warrant appellate review. Amici write in support of that petition to address the

---

[1]     Amici paid for and prepared this brief. No other entity, including the parties to the litigation or their counsel, contributed to its cost or preparation.

22992730.1

District Court's novel interpretation of the "of and concerning" requirement and opinion defense.

This lawsuit arises out of a report by the Monterey Bay Aquarium Seafood Watch about American Lobster in the Northwest Atlantic and the fishing industry's impact on endangered right whales (the "Report") (ECF No. 1-2). In writing on this matter of public concern, MBAF did not single out Respondents—three commercial seafood companies and two trade associations—for criticism, but rather discussed and opined on data and the industry practices of over 5,600 lobster fishermen. By denying MBAF's dispositive motion and allowing Respondents' claims to proceed, the decision misunderstands the rule against group libel, in a way that will have real-world impacts for news reporting. It also departs from the constitutional protection for statements that disclose the predicate facts for a speaker's conclusions, which is particularly concerning when the commentary involves scientific research and public policy. The decision raises significant concerns for the press and without this Court's immediate intervention, risks chilling important reporting and commentary.

## ARGUMENT

### I. Immediate review is warranted because the unprecedented application of the group libel rule below threatens to chill news reporting.

An allegedly libelous statement, "to be actionable, [] must be 'of or concerning the plaintiff.'" *Hudson v. Guy Gannett Broad. Co.*, 521 A.2d 714, 716 (Me. 1987) (citation omitted). Put simply, the allegedly "defamatory words must

22992730.1

refer to 'some ascertained or ascertainable person, and that person must be the plaintiff.'" *E.g.*, *Serv. Parking Corp. v. Wash. Times Co.*, 92 F.2d 502, 504 (D.C. Cir. 1937) (citations omitted).  In Maine, this requirement is not only a common law prerequisite but at least with regards to speech involving public figures, a constitutional requirement.  *Hudson*, 521 A.2d at 716 n.5 ("At least in public figure defamation cases[,] the [F]irst [A]mendment . . . requires that a publication . . . must be 'of and concerning' the plaintiff.'" (citation omitted)); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964) (claim over statements that were not "of and concerning" plaintiff were "constitutionally defective").

From this it follows that "[d]efamation of a large group gives rise to no civil action on the part of an individual member of the group unless he [] can show special application of the defamatory matter to [himself]." *Sullivan v. Chester Water Auth.*, No. 2:22-CV-00147-JDL, 2022 WL 2901068, at *13 (D. Me. July 22, 2022).  This rule against group libel evolved from early common law, *see Sumner v. Buel*, 12 Johns. 475, 477 (N.Y. Sup. Ct. 1815) (recognizing that criticism of an "order of men, is no libel," but instead "must descend to particulars and individuals, to make it a libel"), and has remained the prevailing standard, relied upon by publishers, for centuries, *see, e.g.*, *Arcand v. Evening Call Publ'g Co.*, 567 F.2d 1163, 1164 (1st Cir. 1977) (explaining that claim is insufficient if allegedly defamatory statement is

22992730.1

used broadly concerning the members of a large class or group); Restatement (Second) of Torts § 564A (1977) (same).[2]

At least 5,600 individuals "in Maine alone" "fish within the Gulf of Maine or Georges Bank." Order at 107–08. That is a class "not so small that the Statements [in the Report] can reasonably be understood to refer to the five individual Plaintiffs." *Id*. Yet although the Report did not single out Respondents, the District Court held that it "implicated all lobstermen who fish within the Gulf of Maine or Georges Bank," and they thus satisfied the "of and concerning" requirement. *Id*. at 108. To allow this decision to stand would mark a departure from settled law, under which "amorphous and ill-defined" groups cannot sue over a critical statement that does not target them directly and personally. *See*, *e.g.*, *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1016 (3d Cir. 1994), *cert. denied*, 514 U.S. 1063 (1995) (statements that retailers were "pirates" not of and concerning plaintiff-retailers where group of 25 was too "amorphous and ill-defined"); *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1227 (10th Cir. 1987) (same, for statements about "America's Dog 'Death Camps'" challenged by 955 dog breeders); *Neiman- Marcus v. Lait*, 13 F.R.D. 311, 316 (S.D.N.Y. 1952) (same, for statement that "all"

---

[2]    Maine often looks to the Restatement. *See, e.g.*, *Lester v. Powers*, 596 A.2d 65, 69, (Me. 1991) (adopting § 558 on defamation); *Chapman v. Rideout*, 568 A.2d 829, 830 (Me.1990) (endorsing § 522(1) on negligent misrepresentation).

22992730.1

saleswomen employed by a Neiman-Marcus store were "call girls" where there were 382 saleswomen).

The District Court suggested the Restatement's "circumstances of publication" exception to the group libel doctrine saved Respondent's claims from dismissal. *See* Restatement (Second) of Torts § 564A(b). This exception applies when the alleged defamation, "though made in group terms, is really a veiled reference to a specific group member." Comment, *Group Defamation and Individual Actions: A New Look at an Old Rule*, 71 Calif. L. Rev. 1532, 1535 (1983). Commentators and courts have described it as "merely a recognition that one who is individually defamed can sue even if the defamation is disguised as a group slur." *Id*. at 1536; *accord Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 697 n.5 (9th Cir. 1984). As the Restatement explains it:

> Even when the group or class defamed is a large one, there may be circumstances that are known to the readers or hearers and which *give the words such a personal application to the individual* that he may be defamed as effectively as if he alone were named. Thus "All lawyers are shysters" may be defamatory as to an individual lawyer, when the words are uttered on an occasion when he is the only lawyer present and the context or the previous conversation *indicates that the speaker is making personal reference to him.*

Restatement (Second) of Torts § 564A, cmt. d (emphasis added). In other words, an alleged defamation must still make "particular reference," or "personal application," to the individual suing. *See id*. illus. 5.

22992730.1

This is not the circumstance here.  MBAF did not refer to a group in a manner that effectively made a veiled reference to the individual Plaintiffs.  *See Weatherhead*, 832 F.2d at 1226 (no language or circumstances singled out plaintiffs among nearly 1,000 dog breeders).  The circumstances-of-publication exception does not apply, and this decision to the contrary would occasion a shift in controlling law with real-world consequences.

This is because "the limitations the concept of group libel imposes on [libel] actions," *Provisional Gov't of New Afrika v. ABC, Inc.*, 609 F. Supp. 104, 108 (D.D.C. 1985), safeguards "the social interest in free press discussion of matters of general concern," *Serv. Parking Corp.*, 92 F.2d at 505.  Claims unconstrained by group libel rule would "seriously interfere with public discussion of issues, or groups, which are in the public eye" and "result in the public receiving less information about topics of general concern."  *Mich. United Conservation Clubs v. CBS News*, 485 F. Supp. 893, 900 (W.D. Mich. 1980), *aff'd sub nom.*, *Mich. United Conservation Clubs v. CBS News*, 665 F.2d 110 (6th Cir. 1981); *accord Schuster v. U.S. News & World Rep., Inc.*, 459 F. Supp. 973, 978 (D. Minn. 1978), *aff'd*, 602 F.2d 850 (8th Cir. 1979) (explaining that if statements about a public controversy are too easily held "of and concerning individuals prominent in the controversy," this "would chill heated public debate into lukewarm pap" ).

22992730.1

By rejecting libel claims on the basis of one's association with an allegedly defamed group, the law preserves "journalistic freedom" to "investigat[e] and report[] on matters of public interest." *Schuster*, 602 F.2d at 853. This has resulted in legal protection for many stories on matters of public concern, including those touching on the activities of companies, organizations, and even entire industries. *See id.* (group libel doctrine protects reporting on cancer drug controversy); *O'Brien v. Williamson Daily News*, 735 F. Supp. 218, 222 (E.D. Ky. 1990) (same, for reporting on teachers allegedly having affairs with students, where 27-35 teachers was "too large [a group]" to bring libel claim), *aff'd*, 931 F.2d 893 (6th Cir. 1991) (same, for reporting on teachers allegedly having affairs with students, where 27-35 teachers was "too large [a group]" to bring libel claim); *Riss & Co. v. Ass'n of Am. R.R.s*, 187 F. Supp. 323, 325 (D.D.C 1960) (same, for reports on illegal cargo carried by railroads). Some important reporting might never have published were libel plaintiffs able to maintain suit due to mere association with the subject matter of a story. *See, e.g.*, Emily Bader, *At the Root of an Epidemic in Maine: a Prescription Pad*, Sun Journal (Apr. 10 2022), https://www.sunjournal.com/2022/04/10/legacy-of-pain-part-1-at-the-root-of-an-epidemic-in-maine-a-prescription-pad/ (reporting on web of persons, companies, and interests underlying opioid crisis); Kay Neufeld, *Freight Railroads Police Themselves and Inspect Their Own Tracks. Some Say a Disaster Is Inevitable*, Press Herald (Oct. 8, 2023),

22992730.1

https://www.pressherald.com/2023/10/08/freight-railroads-police-themselves-and-inspect-their-own-tracks-some-say-a-disaster-is-inevitable/ (reporting on those involved in rail system, unreported accidents, and secret transport of hazardous chemicals). Expanding the universe of individuals able to sue over speech that reports on groups and trends threatens reporting.[3]

The decision below is a notable departure in an important area of the law, and the District Court was right to certify its order for review. The "of and concerning" question in this matter can be resolved as a matter of law, and doing so would "materially advance the ultimate termination of the litigation." *United States v. Regeneron Pharms., Inc.*, 2023 WL 8599986, at *1 (1st Cir. Dec. 11, 2023). This Court should grant the petition, review and reverse.

## II. Immediate review is needed to protect non-actionable opinion on matters of scientific debate from this break with precedent.

The decision, if not reviewed and reversed, will impose an especially profound chill on commentary about important scientific and public policy issues. Under the First Amendment—separate and apart from the requirements of Maine law—opinion doctrine protects not only pure opinion but also speech "'when an author outlines the facts available to him, thus making it clear that the challenged

---

[3] The District Court added that the statements are of and concerning Plaintiffs because they "included a call to action," Order at 110, but speech is not entitled to lesser protection because it expresses a viewpoint, *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

22992730.1

statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions.'" *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002) (citation omitted). This constitutional standard safeguards commentary that relies on and discloses predicate facts to form a conclusion. *See id*. ("[T]hose statements are generally protected by the First Amendment."); *Piccone v. Bartels*, 785 F.3d 766, 773 (1st Cir. 2015) (affirming defendant's statements "were not actionable under defamation law" where he had "fully disclosed the non-defamatory facts" underlying them and audience could form "own impression"). This is consistent with the rule that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 727 (1st Cir. 1992) (citation omitted).

Notably, these legal protections are particularly vital where the public policy under discussion involves a complex scientific issue, which courts have explained is properly left to scientists and concerned citizens to test, debate, and resolve—not the judicial system in a defamation action. *See, e.g.*, *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496–97 (2d Cir. 2013) (affirming dismissal of libel case "involving 'matters of argument,'" observing courts "have been reluctant to recognize causes of action grounded on statements of fact that are best evaluated by an informed reader"); *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) (same,

because "[s]cientific controversies must be settled by the methods of science rather than by the methods of litigation. . . . More papers, more discussion, better data, and more satisfactory models—not larger awards of damages—mark the path toward superior understanding of the world around us." (citation omitted)); *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1271 (N.Y. 1991) (same, over letter to editor in scientific journal because discussion of animal experimentation was protected opinion); *Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1202–03 (N.D. Ill. 1984) (entering judgment for libel defendant because "[r]egardless of the merit of [the] opinion," it is a "view which [defendant] is entitled to hold and to expound" because "medical science, is at best an inexact science" of "numerous and widely varied approaches and philosophies" and "much debate and disagreement"), *aff'd*, 757 F.2d 1291 (7th Cir. 1985); *Auvil v. CBS "60 Minutes"*, 836 F. Supp. 740, 742 (E.D. Wash. 1993) (same, because assertions that a chemical was a carcinogen could not be properly resolved as true or false in court), *aff'd*, 67 F.3d 816 (9th Cir. 1995); *Arthur v. Offit*, No. 01:09-cv-1398, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010) (dismissing claim by vaccine skeptic against critic because "[c]ourts have a justifiable reticence about venturing into the thicket of scientific debate, especially in the defamation context").

As relevant to this action, the Seafood Watch program "evaluates the environmental sustainability of wild-caught and farmed seafood" and publishes

22992730.1

"assessments" on the environmental impacts of seafood consumption and sustainability "recommendations" for consumers and businesses. Report at 3. The Report contains MBAF's commentary and recommendations based on its scientific analysis, and it sets forth the facts underlying its opinions as to the sustainability of lobster catch. *Id.* at 13–62. Under controlling First Amendment law, the Report is non-actionable opinion, and this issue of constitutional law—critical to all publishers that seek to inform the public regarding matters of scientific debate—merits review so that speakers and publishers will not be deterred from engaging in important public policy debates.

## CONCLUSION

For the foregoing reasons, amici respectfully urge the Court to grant the petition for leave to appeal pursuant to Section 1292(b).

22992730.1

DATED: May 2, 2025                    Respectfully submitted,


                                      /s/ Sigmund D. Schutz
                                      Sigmund D. Schutz, Esq., #80591
                                      Alexandra A. Harriman, Esq., #1196232
                                      Preti Flaherty, LLP
                                      One City Center
                                      Portland, ME 04101
                                      Phone: 207-791-3000
                                      sschutz@preti.com
                                      aharriman@preti.com

                                      *Counsel for Proposed Amici Curiae*

                                      Lisa Zycherman*
                                      Mara Gassmann*
                                      Abigail Sintim*
                                      REPORTERS COMMITTEE FOR
                                      FREEDOM OF THE PRESS
                                      1156 15th Street NW, Ste. 1020
                                      Washington, D.C. 20005
                                      Phone: 202-795-9300
                                      lzycherman@rcfp.org

                                      *Of Counsel*

22992730.1

**CERTIFICATION OF COMPLIANCE**

This document complies with the type-volume limit because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,501 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman in size 14 font.

DATED: May 2, 2025                    */s/ Sigmund D. Schutz*
                                      Sigmund D. Schutz, Esq., #80591

                                      *Counsel for Proposed Amici Curiae*

22992730.1

## CERTIFICATE OF SERVICE

I, Sigmund D. Schutz, hereby certify that I have filed the foregoing Brief of Amici Curiae electronically with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. I certify that all participants in this case are registered as CM/ECF Filers and that they will be served by the CM/ECF system.

DATED: May 2, 2025

*/s/ Sigmund D. Schutz*
Sigmund D. Schutz, Esq., #80591

*Counsel for Proposed Amici Curiae*

22992730.1

**APPENDIX**

The **Reporters Committee** is an unincorporated nonprofit association. It was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide *pro bono* legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

The **New England First Amendment Coalition** ("NEFAC") is the region's leading defender of First Amendment freedoms and government transparency — the foundation of a healthy democracy. Its board members, advisors and partners include lawyers, journalists, historians, librarians and academics, as well as other private citizens and advocates whose core beliefs include the principles of the First Amendment. The coalition aspires to advance and protect the five freedoms of the First Amendment, and the principle of the public's right to know about government, in Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island and Vermont. In collaboration with other like-minded advocacy organizations, NEFAC also seeks to advance understanding of the First Amendment across the nation and freedom of speech and press issues around the world.

The **Maine Center for Public Interest Reporting** is a non-profit organization founded in 2009 to address Maine's need for investigative reporting on

22992730.1

issues impacting local communities. It publishes The Maine Monitor, dedicated to delivering high-quality, nonpartisan investigative and explanatory journalism to inform Mainers about issues impacting our state and empower them to be engaged citizens, and to keeping that reporting free to read and republish.

The **Maine Pro Chapter, Society of Professional Journalists** is a chapter for Maine-based reporters of the Society of Professional Journalists ("SPJ"), the nation's largest and most broad-based journalism organization, dedicated to encouraging the free practice of journalism and stimulating high standards of ethical behavior. Founded in 1909 as Sigma Delta Chi, SPJ promotes the free flow of information vital to a well-informed citizenry, works to inspire and educate the next generation of journalists and protects First Amendment guarantees of freedom of speech and press.

16